## ESTHER CURRIER *vs.* JOHN CURRIER.

When no place is mentioned for the performance of an obligation, it must, as a general principle, be performed to the obligee in person.

But if the things to be delivered are cumbersome, or the nature of the contract indicates a particular place of performance, this general principle does not apply.

Collateral circumstances may be considered, to ascertain the place intended by the parties

A readiness to deliver the articles at the proper place, and due notice thereof, exonerate the obligor.

THIS was debt on a bond to the plaintiff and her husband jointly and severally.

Her husband, *Jacob Currier*, had since deceased.

The defendant craved oyer of the condition, which being had, it appeared, that in consideration of a conveyance to the defendant by *Jacob Currier* of a tract of land in Chester, the defendant was to pay said *Jacob's* debts, and provide necessary support for him and his wife; or, in failure thereof, was to lease to them, during life, fifty acres of his land in Sandwich, where the defendant resided.

He then pleaded a performance of the condition; to which there was a replication, assigning a breach since the death of her husband.

The rejoinder took issue on this, which being joined, the cause was tried here, in February term, 1819.

It appeared in evidence, that the defendant was a son in law of the plaintiff, and lived in the usual style for a farmer; that, since the date of the bond, in March A. D. 1808, he had not been destitute of room and provisions in his house at

*Currier*
*vs.*
*Currier.*

Sandwich, sufficient for the comfortable support of the obligees, and that, in the winter of A. D. 1809, the father removed and continued there till his death, but the mother refused ever to reside with him and remained at Chester with her other connexions.

A verdict was returned for the defendant, subject to further advisement.

*Moody*, for the plaintiff.

*J. Woodman and Emerson*, for the defendant.

WOODBURY, J.   The pleadings put in issue only the fulfilment of the bond, after the death of the plaintiff's husband.

That issue has been properly found for the defendant, if he was not obliged to fulfil the bond, either to the plaintiff in person, or at such place as she might appoint.   For, otherwise, the house of the defendant appeared to have been a suitable place for her maintenance, and his readiness to support her at such place, would be sufficient without an actual tender of any articles.(1)

(1) 1 Chitt. Pl. 319.—1 East. 203.—7 D. & E. 129.—4 Mass. Rep. 474.

This readiness and notice of it to the plaintiff, in A.D. 1809, were distinctly proved at the trial; and after such an unqualified refusal to remove, as she then gave, it was unnecessary to repeat the invitation since her husband's death.

We feel no disposition to doubt the correctness of the principle, that an obligation, which points out no place of performance, must be fulfilled to the obligee in person, wherever he may chance to be.(2)

(2) Litt. sec. 340.—Com. Di. " Condition," G. 9.

But it is an established exception to this general principle, that when the obligation is not for money, but for articles which are cumbersome, " as an obligation for ten bushels of " wheat," the wheat need not be delivered to the obligee in person, " for that the importableness thereof, shall excuse" the obligor.(3)

(3) 3 Leon. 260, Cheney's case.—4 Leon. 46.
(4) Co. Litt. 210, b.

" And so," says *Coke*, " note a diversity between money " and things ponderous, or of great weight."(4)   But he adds, and the doctrine is generally followed in the books, that these things ponderous must still be delivered at such place as the obligee shall appoint.(5)   Yet it must be obvious, that this position, in its utmost latitude, cannot be correct without

(5) Co. Litt. 210, b.

destroying all substantial "diversity" between the two species of property; for the obligee might appoint, as the place of performance, the place where he may chance to be when the obligation becomes due. Or, what is too unreasonable to be tolerated, he might appoint a place so remote from the residence of the obligor, that the expense of the mere transportation of the articles would exceed the whole price paid for them.

The true rule we apprehend is this, that when the obligation expressly designates no place of performance, and when none can be inferred from facts contained in the obligation, or from other facts, collateral and independent, which may be proved by parol,(1) the obligee may designate any reasonable place for the delivery of the articles.

(1) 8 D. & E. 379.—14 Vez. Jr. 170.—1 Mason 12, Peisch vs. Dickson.—1 Phillips Ev. 441.

But when, from the facts above stated, the place intended by the parties can clearly be inferred, the obligee has no right to appoint a different place.

Thus rent, which, in ancient times, generally consisted of a portion of the produce of the land, might, when no place of payment was expressly named in the lease, be paid or tendered on the land out of which the produce issued.(2) So a bond to make a feoffment was well fulfilled by a tender of a feoffment on the land to be conveyed; because "the estate "must pass by livery."(3)

(2) 18 Edw. IV. 2.

(3) 18 Edw. IV. 3.—Vide etiam.—4 John. 285,Thompson vs. Ketcham.

Thus it must be apparent to every man acquainted with the business of real life, that a contract by a blacksmith to pay a certain sum in his work, when it was proved that he owned a shop in which he was accustomed to labor, ought and must have been intended to be performed at the shop of the promissor. While, on the contrary, if he owned no shop, and labored as a journeyman, and the promissee did own a shop, the inference would be, that the contract was to be performed in labor at the shop of the promissee.

Additional facts might vary the result in both cases; and so many additional illustrations will occur to every one, it is unnecessary to repeat more.

The nature of the support to be furnished by the defendant in the present case, as it must consist of house-room,

food, clothing, nursing, attendance, and other things neces-sary for the comfort of his parents, would make it as " im-"portable" as " ten bushels of wheat." Hence he was not bound to carry them to the obligee, wherever she might happen to dwell.

We think, too, that the place of performance, contemplat-ed by the parties, is clearly to be inferred from the facts contained in the bond, and from other collateral and inde-pendent facts offered in evidence.

In most contracts of this description between parents and a child, the parents retain a life-lease, or mortgage interest in the farm they before occupied. The son, also, resides with them, or has sold his property elsewhere, and is about to remove home. The place of performance would then seem to be the house before occupied by the parents.(1)

(1) 15 Mass. Rep. 262, Wilder vs. Whittemore.

But in this case, the parents retained no interest in the farm they before occupied. The son was settled in a different town, at a considerable distance, and does not appear to have contemplated a removal. On the contrary, it seems probable, that the land, conveyed by the parents in Chester, was to be sold to discharge their debts and defray the ex-penses of their maintenance at Sandwich, where the son re-sided. Because, on the son's neglect to maintain them satis-factorily, their former farm in Chester was not to re-vest, but the son was to give them a life-lease of fifty acres of his own farm in Sandwich ; that being the place where they all doubt-less expected to dwell. The son's own house in Sandwich, and not the house of a stranger, would seem to be the most natural spot for their maintenance.

The increasing infirmities of life would require the watch-ful tenderness of filial affection ; and, for aught which ap-pears, the son not only received insufficient property to pay for their board at Chester, or elsewhere ; but must have ex-pected that his parents would prefer to spend with him the remnant of their days, and be re-paid a part of the debt of infancy as he rocked the cradle of their declining age.

Accordingly, his father, who made and who must well have understood the contract, removed to the son's house,

and resided there till his death. The mother passionately refused ; and as the son's house appears to have been the place of performance, intended at the time the bond was executed, we think she had no right to appoint a different place.

*Judgment on the verdict.*